IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID COLETTA<br>316 S. Providence Road<br>Wallingford, PA 19086,<br>　　　　　　　Plaintiff<br><br>v.<br><br>AMERICAN HOME MORTGAGE<br>SERVICING, INC.<br>1525 S. Beltline Rd<br>Coppell, TX 75019<br><br>And<br><br>QBE INSURANCE GROUP<br>Wall Street Plaza<br>88 Pine Street<br>New York, NY 10005<br><br>And<br><br>QBE FINANCIAL INSTITUTION<br>RISK SERVICES, INC., f/k/a<br>STERLING NATIONAL INSURANCE<br>AGENCY, INC., t/a QBE FIRST<br>210 Interstate North Parkway<br>Suite 400<br>Atlanta, GA. 30339,<br>　　　　　　　Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>No. 2012-cv-<br><br><br><br><br>BREACH OF CONTRACT<br><br>INSURANCE FRAUD |

## COMPLAINT IN CIVIL ACTION

**I.　　PARTIES**

　　1.　　Plaintiff, David Coletta, is an individual, and the titled owner to the real property situated at 316 South Providence Road, Wallingford, PA 19086 (the "subject property").

1

2.      Defendant, American Home Mortgage Servicing, Inc.[1] ("AHMS"), is a mortgage servicer/lender[2] with its corporate offices at 1525 S. Beltine Road, Coppell, Texas 75019. At all times relevant, AHMS is the first mortgagee of the subject property owned by Plaintiff. It is believed that AHMS is the successor in interest to the mortgage on the subject property to Option One Mortgage Corporation. *See* the endorsement on the back of the check represented by Exhibit "A" hereto.

3.      Defendant, QBE Insurance Group ("QBE"[3]), is a financial services organization located at Wall Street Plaza, 88 Pine Street, New York, NY 10005. At all times relevant, QBE has been the issuer of a homeowner's policy of insurance covering the real property of Plaintiff, David Coletta.

4.      Defendant, QBE Financial Institution Risk Services, Inc., formerly known as Sterling National Agency, Inc., now trading as QBE First ("QBE First") is believed to be a servicer of homeowner's insurance, *inter alia,* and is believed to be a wholly-owned subsidiary of QBE. Its principal address is at 210 Interstate North Highway, Suite 400, Atlanta, GA. 30339. At all times relevant, it is believed that QBE First was servicing the policy of homeowner's insurance taken out by Plaintiff and covering the subject property.

## II.    JURISDICTION AND VENUE

---

[1] Reference herein to "AHMS" is intended to mean not only AHMS, but its predecessor(s) in interest, as well.
[2] The servicer of a mortgage is one who is responsible for certain activities involved in mortgage administration and operations, such as receiving payments, ensuring hazard insurance on the property, overseeing payment of taxes (and hazard insurance), imposing late fees and other appropriate and applicable charges, and making distribution of proceeds to the real or beneficial owner of the mortgage, most commonly referred to as the "investor". Often, the "servicer" is not the real owner of the mortgage. In consideration therefor, the servicer derives for its own benefit fees, commissions, and other remuneration from the real owner of the mortgage. One of the benefits of charging late fees is that the servicer keeps late fees that are paid.
[3] Reference to "QBE" in intended to include QBE and QBE First.

2

5. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332(a), as:

    a. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00;

    b. The parties are citizens of different states:

        (i) Plaintiff is a citizen of Pennsylvania;

        (ii) Defendant, AHMS, is believed to be a citizen of Texas;

        (iii) Defendant, QBE, is believed to be a citizen of New York;

        (iv) Defendant, QBE, First, is believed to be a citizen of Georgia.

6. Venue is appropriate as the real property that is the subject of this action, that is the subject of the property damage, that is the subject of the insurance, is in this district, and all contracts involved in the underlying transactions occurred within this district.

### III. FACTUAL STATEMENT

7. Plaintiff, owner and resident[4] of 316 South Providence Road, Wallingford, PA 19086, at all times relevant has had a mortgage with AHMS as the mortgage servicer, Loan Number 000004000484131.

8. Plaintiff, at all times relevant, homeowners' insurance coverage with QBE insuring the subject property, Policy Number LRE780010995.

9. It is believed that the said insurance policy was issued by QBE, and serviced by QBE First.

10. Subject to the applicable policy deductible, the subject property, dwelling, was insured for $284,984.00. *See* the letter from QBE First dated October 25, 2010, attached hereto as Exhibit "B".

---

[4]Plaintiff was a resident until the subject property was determined to be uninhabitable.

11. At all times relevant, however before the accident that damages the subject property, the subject property had a fair market value of $400,000.

12. On October 10, 2010, the subject property suffered extensive damage to the extent that it is now "totaled":

    a. As a result of natural forces and causes, a tree fell on the subject premises, causing extensive damage thereto;

    b. Plaintiff timely notified QBE First of the accident and the damage;

    c. QBE First, citing a Claim Number of 2010013104, acknowledged receipt of the claim and provided certain information to Plaintiff, all as set forth on Exhibit "B".

13. At all times relevant, Plaintiff complied with the requirements to perfect his insurance claim.

14. By a "Short Form", a true and correct copy of which is attached hereto as Exhibit "C", QBE First claimed that the subject property could be repaired for $69,190.49.

15. QBE, by check dated November 23, 2010, made a payment of the first instalment of the amount QBE First deemed appropriate to repair the damage to the subject property. *See* Exhibit "A".

16. The check, made payable to "The American Home Mortgage Servicing., Inc. and David Coletta, for the sum of $59,965.08, was mailed to the mortgagee, AHMS. The check was received by AHMS on November 24, 2010. *See* the date-stamp on Exhibit "A".

17. These funds represented by Exhibit "C" were intended to be utilized to put the subject property into habitable condition.

18. However, AHMS received the said check, endorsed its own signature to itself, and forged the endorsement of Plaintiff, David Coletta.

19. Despite demands for release of the money to Plaintiff so that he could effect repairs on the subject property, AHMS took, converted, the funds represented by Exhibit "C" and applied it internally for itself.

20. At no time did Plaintiff have possession or control of the said check.

21. Plaintiff demanded the check be given to him to effect repairs, but AHMS forged Plaintiff's endorsement and has kept the money.

22. As a result, Plaintiff did not have sufficient funds to effect repairs, resulting in a worsening damage to the subject property.

23. Eventually, because Plaintiff was precluded from protecting the remains of the subject property, the residence deteriorated so substantially as to be rendered wholly uninhabitable.

24. During this interim, Plaintiff received an insurance proceeds check approximating $22,000.00 which was made payable to AHMS and Plaintiff.

25. The latter payment was not cashed as AHMS advised Plaintiff they would not endorse it and give the proceeds to Plaintiff to use in fixing the subject property.

26. The totaled condition of the residence on the subject property, insured for $284,984.00, was reported to QBE, which refused and failed to pay the insurance proceeds to enable the reconstruction of the residence.

27. QBE has acted in bad faith in failing and refusing to pay to Plaintiff either the replacement value of the residence on the subject property, or the fair market value of the residence on the subject property as valued before the initial damage thereto.

28. QBE has acted in bad faith by acting in a frivolous manner with its unfounded refusal to pay the policy proceeds.

29. QBE acted in bad faith because of its denial of coverage when it had no good reason to do so.

30. QBE failed to act with the utmost good faith toward Plaintiff, its insured, and by further not considering the interests of Plaintiff compared to its own self-interest. *See Cowden v. Aetna Casualty & Surety Co.*, 389 Pa. 459, 134 A.2d 223, 228 (Pa. 1957).

31. QBE lacked a reasonable basis for denying the full coverage of the claim by Plaintiff under the policy.

32. QBE knew of and recklessly "disregarded its lack of reasonable basis in denying the [full] claim", and (2) the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim. *See Keefe v. Prudential Property & Casualty Co.*, 203 F.3d 218, 225 (3d Cir. 2000).

33. AHMS has acted in bad faith in failing and refusing to provide to Plaintiff the insurance proceeds from QBE to enable Plaintiff to reconstruct the residence on the subject property.

34. AHMS has acted in bad faith by acting in a frivolous manner with its unfounded refusal to provide the insurance proceeds for the renovation of the insured residence on the subject property.

35. AHMS failed to act with the utmost good faith toward Plaintiff, its mortgagor, and by further not considering the interests of Plaintiff compared to its own self-interest. *See Cowden v. Aetna Casualty & Surety Co.*, 389 Pa. 459, 134 A.2d 223, 228 (Pa. 1957).

36. QBE lacked a reasonable basis for denying the full coverage of the claim by Plaintiff under the policy.

37. AHMS knew of and recklessly "disregarded its lack of reasonable basis in not providing the insurance proceeds for the repair of the residence situated on the subject property.

38. All of Plaintiff's report to QBE and AHMS were timely and in proper format.

## IV. CAUSES OF ACTION

Paragraphs one through and including thirty-eight above are incorporated herein by reference as if set forth herein at length.

### A. Breach of Contract: Plaintiff v. AHMS

39. Plaintiff entered into a contract with AHMS, by the latter's predecessor in interest, consisting of two basic documents: The note and a mortgage, each of which are believed of record with the Delaware County Recorder (Register) of Deeds, and incorporated herein by reference as if set forth herein at length, pursuant to Pennsylvania Rule of Civil Procedure ("Pa. R.C.P.") 1019.

   a. Plaintiff and AHMS entered into the Note by which AHMS agreed to provide a secured loan to Plaintiff in return for which Plaintiff agreed to repay the loan with interest over the specified period of the loan;

   b. As security therefor, Plaintiff gave AHMS a mortgage providing that the subject property would act as collateral security for the loan.

40. The contract by and between Plaintiff and AHMS was for good and valuable consideration, after the parties had achieved a mutual meeting of the minds, and the offer to provide a loan by AHMS had been accepted by Plaintiff.

41. The contract by and between Plaintiff and AHMS automatically, and by law, carries with it the obligation of "good faith and fair dealing".

42. By its failure and refusal to exercise good faith and fair dealing by withholding the funds necessary to initiate immediate repairs on the subject property residence, by withholding the check for $59,966.08, Plaintiff has suffered and continues to suffer substantial damages.

43. AHMS has not acted honestly in its conduct and the transaction incurred in that AHMS has asserted an express contractual duty upon Plaintiff to preserve the subject property; however, by its withholding of the funds, derived from insurance, necessary to permit Plaintiff to do that which is necessary to preserve the residence on the subject property, AHMS renders Plaintiff's contractual obligation impossible to perform.

44. AHMS has proceeded in bad faith.

45. As a direct and proximate result of the failure of AHMS to comply with its contractual relationship with Plaintiff, Plaintiff has suffered substantial damages approximating $286,000.00.

WHEREFORE, Plaintiff demands judgment in the amount necessary to place the subject property and the residence thereon in the condition it was preceding the accident, or $284,984.00.

**B.   Breach of Contract:  Plaintiff v. QBE**

Paragraphs one through and including forty-five above are incorporated herein by reference as if set forth herein at length.

46. Plaintiff entered into a contract with QBE, consisting of the contract of insurance covering the residence on the subject property. Plaintiff is attempting to locate a true and correct copy of the said insurance contract.

47. Plaintiff and QBE entered into the insurance contract by which QBE agreed to provide insurance against hazards that may impact the residence on the subject property. In consideration therefor, Plaintiff agreed to and has paid premiums to QBE, which have been accepted by QBE. *See* Exhibit "B".

48. The contract by and between Plaintiff and QBE was for good and valuable consideration, after the parties had achieved a mutual meeting of the minds, and the offer to provide insurance had been accepted by Plaintiff and QBE.

49. The contract by and between Plaintiff and QBE automatically, and by law, carries with it the obligation of "good faith and fair dealing".

50. By its failure and refusal to exercise good faith and fair dealing by paying the sum of insurance necessary to place the subject premises in the condition preceding the damaging incident, by withholding the funds necessary to initiate immediate repairs on the subject property residence, Plaintiff has suffered and continues to suffer substantial damages.

51. QBE has not acted honestly in its conduct and the transaction incurred in that QBE has failed to act in good faith to pay sums sufficient to place the property in habitable condition.

52. QBE has proceeded in bad faith.

WHEREFORE, Plaintiff demands judgment in the amount necessary to place the subject property and the residence thereon in the condition it was preceding the accident, or $284,984.00, the amount for which the subject property, and the residence thereon, was insured.

C. **Violation of Pennsylvania's Unfair Trade Practices Act ("UTPCPL") (73 P.S. § 201-1): Plaintiff v. AHMS**

Paragraphs one through and including fifty-two above are incorporated herein by reference as if set forth herein at length.

9

53. Plaintiff is a consumer.

54. Defendant is an entity which has placed its product for sale into the stream of commerce of the United States of America, and made such product available to the consumer in every jurisdiction in which any member of the Class resides.

55. Defendant has advertised, offered for sale or distribution its respective products, including services.

56. Defendant, AHMS, has engaged in unfair trade practices, unfair methods of competition, and has practiced other unfair or deceptive acts or practices directly or indirectly adversely affecting the Plaintiff, as described above, in Count I and the factual statement.

The acts and practices include, but are not limited to:

    a. Making false or misleading statements of fact, by silence or otherwise;

    b. Knowingly taking and retaining possession of the proceeds represented by Exhibit "A";

    c. Knowingly misrepresenting that AHMS has the right to withhold payment of the insurance proceeds when the subject property is in jeopardy of significant value diminution;

    d. "Engaging in other fraudulent conduct which creates a likelihood of confusion or of misunderstanding"

    e. Engaging in any other conduct deemed to constitute unfair trade practices, unfair methods of competition, or other unfair or deceptive acts or practices.

WHEREFORE, Plaintiffs pray this Honorable Court find in favor of plaintiff and against AHMS and grant compensatory damages, statutory damages, treble damages, punitive damages, costs, interest and attorney's fees.

    **D.**    **Violation of Pennsylvania's Unfair Trade Practices Act ("UTPCPL") (73 P.S. § 201-1): Plaintiff v. QBE**

10

Paragraphs one through and including fifty-six above are incorporated herein by reference as if set forth herein at length.

57. Plaintiff is a consumer.

58. Defendant is an entity which has placed its product for sale into the stream of commerce of the United States of America, and made such product available to the consumer in every jurisdiction in which any member of the Class resides.

59. Defendant has advertised, offered for sale or distribution its respective products, including services.

60. Defendant, QBE, has engaged in unfair trade practices, unfair methods of competition, and has practiced other unfair or deceptive acts or practices directly or indirectly adversely affecting the Plaintiff, as described above, in Count I and the factual statement.

The acts and practices include, but are not limited to:

a. Making false or misleading statements of fact, by silence or otherwise;

b. Knowingly withholding insurance proceeds to Plaintiff resulting in the complete destruction and loss of the value of the residence on the subject property, without cause;

c. Knowingly misrepresenting that QBE has the right to withhold payment of the insurance proceeds when the subject property is in jeopardy of significant value diminution;

d. "Engaging in other fraudulent conduct which creates a likelihood of confusion or of misunderstanding"

e. Engaging in any other conduct deemed to constitute unfair trade practices, unfair methods of competition, or other unfair or deceptive acts or practices.

WHEREFORE, Plaintiffs pray this Honorable Court find in favor of plaintiff and against QBE and grant compensatory damages, statutory damages, treble damages, punitive damages,

11

costs, interest and attorney's fees.

### E. Bad Faith: Plaintiff v. QBE 42 Pa. C.S.A. § 8371

Paragraphs one through and including sixty above are incorporated herein by reference as if set forth herein at length.

61. QBE has acted in bad faith toward the insured.

WHEREFORE, Plaintiff is entitled to the amount of the claim equating to the total loss of the residence on the subject premises, interest on the claim from the date the claim was made by the insured equal to the prime rate plus 3%, and punitive damages and attorney's fees and costs against the insurer.

Respectfully submitted:

Stuart A. Eisenberg, Esquire
Attorney I.D. 12433
Carol B. McCullough, Esquire
Attorney I.D. 56424
McCullough Eisenberg, LLC
65 West Street Road, Suite A-105
Warminster, PA 18974
Tel. (215) 957-6411
Fax. (215) 957-9140
mlawoffice@aol.com